UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: NICOLAE SGAVERDEA, No. 11-06-11063 MA

Debtor.

**ORDER GRANTING MOTION FOR EXTENSION OF CREDIT FOR THE PURCHASE OF REAL PROPERTY UPON SIMULTANEOUS CLOSING**

THIS MATTER is before the Court on the Motion for Extension of Credit for the Purchase of Real Property upon Simultaneous Closing or Alternatively Motion for Assignment of Rights under Lease Agreement ("Motion"), filed by the Debtor (Mr. Sgaverdea), by and through his attorney, Ronald E. Holmes. At issue is whether the Debtor exercised an option to purchase certain real property located at 5565 4th Street NW, Albuquerque, New Mexico (the "Property") under a Lease and Sublease for the Property following the sale of the Property to MVD Specialists, LLC ("MVD Specialists"). Debtor seeks to complete the transaction through simultaneous closing whereby a third party will become the ultimate owner of the Property.[1]

MVD Specialists opposes the Motion and raises the following arguments: 1) because the Property will continued to be used as a gas station, there is no option to purchase under the lease; or 2) if there is a right to purchase, no notice of the sale was required under the terms of the lease, yet notice of the sale was nevertheless provided; and 3) the Debtor failed to exercise the option because the Debtor did not close within the ninety-day option period required under the lease. Upon review of the exhibits, testimony, and evidence before the Court, the Court finds that the Debtor should be permitted to purchase the Property through a simultaneous closing.

---

[1]Alternatively, Debtor seeks to assign his option rights to the third party. Because the Court will resolve the Motion under Debtor's request for simultaneous closing, it is not necessary for the Court to consider Debtor's alternative ground for relief.

1

Before the final hearing on the Motion[2] the parties stipulated to many of the relevant facts, including the following:

1. Calvin P. Horn and Ruth C. Horn, as Lessor entered into a lease dated October 18, 1977 ("Lease") with Plateau, Inc. as Lessee for certain properties, including the Property. (*See* Land Lease - Exhibit 1).

2. Plateau, Inc. assigned its interest as Lessee under the Lease to Thriftway Marketing Corp. ("Thriftway").

3. Thriftway subleased the Property to the Debtor under a Sublease dated April 4, 1997. (*See* Sublease Agreement - Exhibit 2).

4. The Sublease was amended on May 27, 1997 and again on February 18, 2006. (*See* Amendment to Sublease Agreement - Exhibit 3; and Second Amendment to Sublease Agreement - Exhibit 4).

5. Notice of a pending sale of the Property was sent to Thriftway on February 27, 2007. (*See* Letter from Barbara Haase of Cauwels & Stuve to Thriftway - Exhibit 7).

6. Notice of a pending sale of the Property was sent to the Debtor on the same date. (*See* Letter from Barbara Haase of Cauwels & Stuve to Mr. Sgaverdea - Exhibit 8).

7. MVD Specialists purchased the Property on March 28, 2007.

8. Ninety days from March 28, 2007 is June 26, 2007.

9. On June 5, 2007, the Debtor sent a letter to Thriftway giving formal notice that he was exercising his option to purchase the Property. (*See* Letter from Mr. Sgaverdea to Robert Moss -

---

[2] *See* MVD Specialists, LLC's and Nicolae Sgaverdea's Stipulated Facts (Docket # 102). The parties also stipulated to the entry of Exhibits 1-26 at trial.

Exhibit 14).

10. On June 6, 2007, Thriftway gave notice to James Baird[3] that it intended to exercise its option to purchase the Property. (*See* Letter from Robert Moss to James Baird - Exhibit 15).

11. The Debtor sent a proposed purchase agreement to counsel for MVD Specialists on June 26, 2007. (*See* Letter from Mr. Sgaverdea to Catherine Davis and James Baird - Exhibit 20). In response counsel for MVD Specialists sent a revised purchase and sale agreement to the Debtor on July 9, 2007. (*See* Letter from Catherine Davis to Robert Moss and Mr. Sgaverdea - Exhibit 23). The Debtor responded by letter dated July 17, 2007 requesting more information. (*See* Letter from Mr. Sgaverdea to Catherine Davis - Exhibit 24).

12. MVD Specialists revoked its offer to purchase on July 24, 2007. (*See* Letter from Catherine Davis to Ronald Holmes - Exhibit 25).

<u>Additional facts relevant to the disposition of the Motion</u>

Paragraph 16 of the Lease is an option to purchase. It provides, in relevant part:

<u>Option to Purchase:</u>   The Premises are one of twenty-six (26) locations which are being leased to the Lessee effective October 18, 1977, and therefore this Lease is subject to the terms and conditions set forth in that certain Agreement to Purchase and Lease dated October 18, 1977, which allows lessee at all times until the termination of all such leases, subject to certain conditions hereinafter set forth, at its option to purchase any of the lease land which then remains subject to a lease entered pursuant to the aforesaid Agreement.

If at any time during the initial or extended term of the lease Lessee decides not to operate this location as a retail gasoline service station, Lessee may purchase the Premises subject to the following terms and conditions:
(a) Within fifteen (15) days after receipt by Lessor of written notice from Plateau that it desires to initiate the following property valuation procedure for the purpose of deciding to exercise its purchase option: the parties to the Lease shall initiate steps to determine the value of the land as follows:

---

[3]James Baird is the managing member of MVD Specialists. *Testimony of Mr. Baird.*

3

. . . .
(b) Within thirty (30) days after receipt of the appraisals Lessee shall exercise or decline to exercise its option to purchase by written notice to the Lessor. Unless otherwise agreed, such purchase shall be paid for in cash at the closing which shall take place within ten (10) days of the exercise of the option by Lessee.

(c) . . . .

(d) . . . .

(e) Purchase of the land shall not affect any lease then existing with regard to buildings and improvements or Station Equipment, except as provided in such lease.

(f) In the event Lessor sells the land subject to the Lease to any party other than a member of the Calvin P. Horn or H.B. Horn families, a Horn family trust or a Horn family foundation, the property valuation procedure herein described shall not be used and Lessee may exercise its option to purchase the premises for a period of ninety (90) days after such sale at the same price at which Lessor sold the property.

Paragraph 23. of the Lease provides for the sale or mortgage of the Property by Lessor, as follows:

> Lessor may sell or mortgage the premise at any time provided that the Lease shall remain a first lien on the property and any purchase or mortgage shall be subject to all of the provisions of this Lease including Lessee's option to purchase, and the purchaser or mortgagee shall acknowledge the Lease and the prior rights of the Lessee in and to the property in written recordable form acceptable to Lessee.

The Sublease between Thriftway and the Debtor contains the following provision regarding an option to purchase:

> Sublessee shall have and is hereby granted an option, provided the Sublease is in good standing at the time Sublessee exercises its option, to purchase the leased premises during the final year of the Sublease term in accordance with the provisions set out in Section 16 of the Land Lease for the subleased premises entered into by and between H.B. Horn and Lucille L. Horn, as landlord, and Sublessor, as tenant . . .

Sublease, ¶ 23.

The notice of the pending sale, sent to Thriftway and to Mr. Sgaverdea on February 27, 2007, identified MVD Specialists as the buyer, and stated that the expected closing date was March 28, 2007. The letters recite that the notice was being given "pursuant to Section 16 of the Land Lease". The letter sent to Mr. Sgaverdea states that the price for the sale is

4

$285,000.00, with seller's escrow of $20,000.00 towards the cost of tank removal upon the discontinuance of gas station operations, and provides the "Lease payments after closing are payable to Buyer, at address to be given post-closing."  (*See* Exhibit 8).

A Special Warranty Deed executed by Melinda Horn Lankering conveying the property to MVD Specialists was executed on March 23, 2007 and recorded in the real property records of Bernalillo County on March 30, 2007.  (*See* Exhibit 9).  Ms. Lankering also executed an Assignment of Leases and Rents, dated March 28, 2007, assigning her right, title, and interest in and to the Land Lease and the Sublease to MVD Specialists.  (*See* Exhibit 12).   A copy of the Assignment of Leases and Rents was not provided to Thriftway or to Mr. Sgaverdea immediately following the closing of the sale of the Property to MVD Specialists.  (*See* Exhibit 13 - Letter from Thriftway to Barry Williams, counsel for Ms. Lankering).

MVD Specialists did not acknowledge in written recordable form acceptable to Thriftway and/or Mr. Sgaverdea the prior rights of Thriftway and/or Mr. Sgaverdea in the Property under the Lease.   The earliest Thriftway or Mr. Sgaverdea had knowledge that the pending sale to MVD Specialists had, in fact, closed was May 30, 2007.  (*See* Exhibit 13  - acknowledging a telephone conference with counsel for Ms. Lankering, in which counsel informed Thriftway that the property was sold).

Debtor does not have his own funds sufficient to purchase the Property, but Brad Hall and Associates, Inc. is willing to purchase the Property from the Debtor. *Testimony of Logan Hall.*  The Lease and the Sublease expired on September 30, 2007.   MVD Specialists agreed to allow the Debtor to remain on the Property through October 31, 2007, and pay rent for that period in the same amount provided under the Sublease, as amended.

5

DISCUSSION

    A.    Debtor had an option to purchase the Property in accordance with Paragraph 16(f) of the Lease.

To determine whether the Debtor had an option to purchase the Property under the Lease the Court must construe the terms of the Lease. Leases are contracts subject to general rules of contract interpretation.[4] Contract interpretation is generally a matter of state law.[5] Under New Mexico law, unambiguous contractual obligations contained in a lease are to be enforced as they are written. *United Properties, Ltd. Co. v. Walgreen Properties, Inc.,* 134 N.M. 725, 729, 82 P.2d 535, 539 (Ct. App. 2003). "The primary objective in construing a contract is to ascertain the intention of the parties." *Mobile Investors v. Spratte,* 93 N.M. 752, 753, 605 P.2d 1151, 1152 (1980) (citations omitted).

Paragraph 16's introductory sentence provides that the Lessee may exercise an option to purchase if the Lessee determines not to operate the Property as a gas station, subject to certain terms and conditions. Subparagraphs (a) through (f) then follow. Subparagraphs (a) and (b) set up a property valuation procedure. Subparagraphs (c) through (e), while they do not specifically reference the property valuation procedure enumerated under the preceding subparagraphs (a)

---

[4] *See Oklahoma Plaza Investors, Ltd. v. Wal-Mart Stores, Inc.,* 203 B.R. 479, 481 (N.D.Okla. 1994) (lease interpreted under applicable state contract law). *El Paso Natural Gas Co. v. Western Bldg. Associates,* 599 F.2d 927 (10th Cir. 1979) ("El Paso Gas I") (interpreting lease provision for purchase option as a contract).

[5] *See In re Schott,* 282 B.R. 1, 7 (10th Cir. BAP 2002)("In construing and interpreting contracts, the court must look to state law.")(citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). *See also, In re Williams,* 183 B.R. 895, 897 (D.Kan.1995) (noting that courts generally look to state law for the rules governing contract interpretation)(citation omitted).

6

and (b), also appear to apply when the Lessee wishes to purchase the Property because it has determined not to operate the Property as a gas station.

The language in subparagraph 16(f), however, arises "'in the event the Lessor sells" the Property to a party other than a member of the Horn family, a Horn family trust, or a Horn family foundation, and provides that "the property valuation procedure herein described shall not be used." Subparagraph 16(f), then, provides for an alternative purchase option under the Lease which arises upon the sale of the Property by the Lessor to a party other than a member of the Horn family, a Horn family trust, or a Horn family foundation. To interpret the introductory language of paragraph 16 to limit subparagraph 16(f)'s application only when the lessee decides not to operate the Property as a gas station would effectively write out the purchase option provided under subparagraph 16(f). Language contained in a contract should not be interpreted to cancel out other language the parties to the contract intentionally included. *See Public Service Co. of New Mexico v. Diamond D Constr. Co., Inc.,* 131 N.M.100, 109, 33, P.2d 651, 660 (Ct.App. 2001), *cert. quashed,* 131 N.M. 221, 34 P.3d 610 (2001)(acknowledging the well-established rule of contract interpretation that "particular provisions should not be read to annul other provisions unless there is no other reasonable interpretation.")(citation omitted).[6] The Court, therefore, finds that subparagraph 16(f) provided the Debtor with an option to purchase that arose upon the sale of the Property by the Lessor to MVD Specialists.

---

[6]In construing a contract, the court must "view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions. . . . '[a]pparently conflicting provisions must be reconciled so as to give meaning to both, rather than nullifying any contractual provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument in light of the surrounding circumstances.'" *Id.* at 108, 659 (quoting 17A C.J.S. Contracts § 324, at 348-49 (1999) (footnotes omitted) (citing Restatement (Second) of Contracts § 203(a) (1981)(remaining citations omitted)).

B. Because the option provides for purchase *after* a sale of the Property, notice of a *pending* sale is insufficient to put the sublessee on notice that the option period has begun to run.

MVD Specialists contends that no notice of the sale was required under the terms of the Lease, but that, in any event, notice was given. Subparagraph 16(f) provides the lessee with an option to purchase the Property "for a period of ninety (90) days after such sale at the same price at which Lessor sold the property." Lease, ¶ 16(f). The purchase option under Paragraph 16(f) does not arise until a sale has, in fact, occurred. Unless the lessee is informed that a sale has occurred, lessee would have no way of knowing that the option period under subparagraph 16(f) has begun to run.

The letters sent to the Debtor and to Thriftway informing them of a *pending* sale fail to notify the parties that a sale of the Property occurred, and, consequently fails to put the parties on notice that the option period has begun to run. The recording of the Special Warranty Deed likewise fails. Neither Thriftway nor the Debtor were required to conduct ongoing searches of the real property records to ascertain whether the pending sale of the Property closed. Finally, MVD Specialists never acknowledged the sublease in written, recordable form, acceptable to the Debtor, as sublessee, as required under Paragraph 23 of the Land Lease.

C. Debtor's letter dated June 5, 2007 was sufficient to exercise the option under the terms of the Land Lease and the Sublease.

Debtor sent a letter to Thriftway dated June 5, 2007, which stated that he was giving formal notice that he was exercising his option to purchase the Property. *See* Exhibit 14. Thriftway notified MVD Specialists of the Debtor's notice of intent to exercise the option to purchase by sending a letter to MVD Specialists on June 6, 2007. *See* Exhibit 15. A copy of the June 5, 2007 letter from the Debtor stating that he was exercising his option was enclosed with

8

the letter sent by Thriftway to MVD Specialists. *Id.* These letters were sent within the ninety-day period specified under subparagraph 15(f) of the Lease. MVD Specialists contends that notice of intent to exercise the purchase option given within ninety days of the sale is not the equivalent of exercising the option, and that because the Debtor failed to close the transaction within ninety days, he has failed to exercise the option. This Court disagrees.

Although construing an oral agreement for an option to purchase certain equipment, the New Mexico Supreme Court has noted, generally, that

> [i]n accordance with general rules of contract law, if an agreement grants an option to purchase, and is 'silent as to the time at which payment of the stipulated purchase price is to be made, the option may ordinarily be *exercised by the optionee without making or tendering payment at the time of such . . . exercise.*'
>
> *Cranetex, Inc. v. Mountain Dev. Corp.,* 106 N.M. 5, 6, 738 P.2d 123, 124 (1987)(quoting Annotation, Necessity for Payment or Tender of Purchase Money within Option Period in Order to Exercise Option, in Absence of Specific Time Requirement for Payment, 71 A.L.R.3d 1201, 1219 (1976)(emphasis added by *Cranetex*)(remaining citations omitted).

Subparagraph 16(f) states only that the "Lessee may exercise its option to purchase the premises for a period of ninety (90) days after such sale at the same price at which Lessor sold the property." And while it contains a time period within which to exercise the option, it does not specify that closing or payment of the purchase price must be completed within that time period. Nor does the lease state that time is of the essence. When the option clause does not state that tender of the purchase price is required to exercise the option, "the general rule is that . . . [the option] may be exercised merely by giving notice." *El Paso Natural Gas Co. v. Western Bldg. Associates,* 675 F.2d 1135, 1140 (10th Cir. 1982) ("El Paso Gas II").[7]

---

[7]In that case, the purchase option provided the lessee "the exclusive right and option to purchase . . . 8.08 acres of land . . . for a total consideration of $850,000.00 in cash; provided,

9

Under these circumstances, where the language in the Lease does not specify that tender of payment is required to exercise the option, the Court concludes that the Debtor exercised the option under subparagraph 16(f) of the Lease by giving notice during the ninety-day period provided under the Lease of his intent to purchase the Property.[8] Debtor exercised his option to purchase by giving formal notice within the ninety-day option period that he was exercising his purchase option, which is consistent with the requirement that "when the parties enter into an option contract for the purchase of land, the option must be exercised according to the terms of the contract," and the further requirement that "[w]hen option or other contracts contain specific time limits, time is of the essence" *United Properties,* 134 N.M. at 730, 82 P.2d at 540 (citations omitted).

Equitable considerations further support this conclusion. Debtor received insufficient notice of the completed sale. MVD Specialists failed to comply with the requirement under paragraph 23 of the Lease to "acknowledge the prior rights of the lessee in and to the property in

---

however, this option shall be effective during a one hundred twenty (120) day period following the expiration of the initial term of this Lease.'" *El Paso Natural Gas,* 675 F.2d at 1137. The trial court's specific finding that the option did not require tender (though it also found that the lessee could have obtained a draft for the purchase price within 24 hours, so that a pro forma tender was unnecessary) was not clearly erroneous. *Id.* at 1140.

[8]*See, Estate of Schler v. Benson,* 947 S.W.2d 495, 500 (Mo. App. W.D. 1997)(construing Missouri law and noting that once an option to purchase land is exercised, the option changes from a unilateral, irrevocable offer, into a bilateral contract for the sale of land, such that time is not of the essence with regard to the payment of the purchase price subsequent to the exercise of the option, and the sale need not be completed before the expiration of the option period.). *See also, DeTar Distrib. Co. v. Tri-State Motor Transit Co.,* 379 F.2d. 244, 248 and n. 5 (10th Cir. 1967) (construing purchase option providing that the option must be exercised within ninety days, and noting that where the contract contains nothing to suggest that exercise of the purchase option is to be made other than by notice, notice is the manner in which to "exercise" an option)(citing *Crane-Rankin Dev. Co. v. Duke,* 185 Okl. 223, 90 P.2d 883 (1939)).

10

written recordable form acceptable to lessee." And, the parties continued to negotiate beyond the ninety-day period following the closing of the sale of the Property to MVD Specialists.

> D. Although the purchase option contained in ¶ 16(f) of the Lease provides that the Lessee may purchase the Property "at the same price" at which the Lessor sold the Property, Debtor is bound by the relief requested in the Motion.

The settlement statement for the sale of the Property establishes a contract sales price of $285,000.00. *See* Exhibit 10. Thus, under the language of subparagraph 16(f) of the Lease, which authorizes the lessee to purchase the property "at the same price at which the Lessor sold the property", the purchase price required to exercise the option would be $285,000.00. But the Debtor's Motion recites that interest and other charges have been incurred by MVD Specialists since the purchase of the Property, that the charges accrue at the rate of $53.70 per day, and that the purchase price for the Debtor to exercise his option is approximately $305,000.00 as of the date the Motion was filed.

Because the Motion sought to close the transaction at a price which included MVD Specialists' closing costs and interest from the date MVD Specialists purchased the Property, the Debtor cannot now assert that the option to purchase can be completed at the sales price.[9] The Court, therefore, finds that the purchase price the Debtor must pay at closing is $289,396.13[10] plus interest at the rate of $53.70 from March 28, 2007 through the date of closing.

---

[9]*Cf. Johnson v. Yates Petroleum Corp.,* 127 N.M. 355, 361, 981 P.2d 288, 294 (Ct. App.1999) (noting that under the doctrine of 'judicial estoppel' "a party is not permitted to maintain inconsistent positions in judicial proceedings" so that "[w]here a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formally taken by him.").

[10]This figure consists of the purchase price in the amount of $285,000.00 plus MVD Specialists' closing costs in the amount of $4,396.13. *See* Exhibit 10.

11

E. Debtor must close the transaction within 10 days of entry of this Order.

Having determined that the Debtor exercised the purchase option contained in subparagraph 16(f) of the Lease, the Court must determine a time limit within which the Debtor must close the transaction. Closing for the sale of real property following the exercise of an option to purchase must occur within a reasonable time. *See Nahn v. Soffer,* 824 S.W.2d 442, (Mo.App. E.D.1991) (finding that where the option contract is silent as to a closing date, it is nevertheless implied that the party exercising the option to purchase is required to close within a reasonable time)(citation omitted).[11] Under subparagraph 16(b) of the Lease, the alternative purchase option provision, the lessee is required to provide written notice of its intent to exercise or not to exercise its option within thirty days after receipt of the appraisal, and, unless otherwise agreed, closing must occur within ten days of the exercise of the option to purchase. *See* Lease, ¶ 16(b).

In this instance, the Debtor did not tender the purchase price to MVD Specialists within ten days of the June 5, 2007 letter. Instead, Debtor sent a proposed purchase agreement to MVD Specialists on the last day of the ninety-day option period, and the parties continued to negotiate until July 24, 2007, when MVD Specialists revoked its offer. The Debtor filed the Motion shortly thereafter. Under the present circumstances, where the parties continued to negotiate beyond the ninety-day option period, the Court finds that ten days from the date of entry of this Order is a reasonable time within which the closing must occur.

F. Debtor can complete the transaction by simultaneous closing.

---

[11]*See also, Cranetex,* 106 N.M. at 6, 738 P.2d at 124 (finding that, where option provision was silent as to the time for payment, party exercised its option to purchase by giving notice of its intent to purchase, and was prepared to make full payment "within a reasonable time").

12

At the final hearing Mr. Logan Hall of Brad Hall and Associates, Inc. stated that his company is ready and able to fund the transaction immediately. MVD Specialists counters that the purchase option cannot be assigned, and that it does not consent to assignment.[12] Assignment is unnecessary because the Debtor proposes to complete the transaction through a simultaneous closing whereby Brad Hall and Associates, Inc. will fund the purchase price and become the owner of the Property which it will then lease to the Debtor. Nothing in the Lease prohibits this arrangement.

WHEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED. Debtor shall close the transaction for the purchase of the Property as a simultaneous closing with Brad Hall and Associates, Inc. within ten days of the date of entry of this Order at a purchase price of $289,396.13, plus interest at the rate of $53.70 per diem from March 28, 2007 through closing. Because MVD Specialists received the Property by Special Warranty Deed, transfer of the Property at closing may occur by Special Warranty Deed. Debtor is entitled to a credit at closing for the pro-rated portion of any pre-paid rent.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

---

[12] This argument appears contrary to the terms of the Lease. Paragraph 20. of the Lease provides that the "Lessee shall have the right without consent of the Lessor, to assign this Lease at any time during the term of this Lease . . . " *See* Land Lease, ¶ 20, attached as Exhibit B to the Motion. The copy of the Lease admitted at trial as Exhibit 1 is missing page 15, which contains ¶ 20. of the Lease.

13

COPY TO:

Ronald E. Holmes  
Attorney for Debtor  
112 Edith Blvd NE  
Albuquerque, NM 87102

Catherine F. Davis  
Attorney for MVD Specialists, LLC  
PO Box 30088  
Albuquerque, NM 87190

14