UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
    Nicolae Sgaverdea,
    Debtor.                                          No. 11-06-11063 MA

MEMORANDUM OPINION AND ORDER
ON CALCULATION OF POST-CONFIRMATION
QUARTERLY FEES TO THE UNITED STATES TRUSTEE

THIS MATTER is before the Court on the confirmation of the Debtor's plan in this small business Chapter 11. Docket 51. The United States Trustee (UST) filed a Motion to Dismiss or Convert this case to Chapter 7 because the Debtor was delinquent on payment of quarterly fees owed to the UST pursuant to 28 U.S.C. § 1930(a)(6). Docket 75. At the hearing on confirmation, the UST agreed to withdraw this motion, and the Debtor agreed to withdraw a motion for waiver of quarterly fees. A briefing schedule was established on the calculation of quarterly fees. Dockets 81 and 82.

Although all quarterly fees are now current,[1] the parties dispute whether the fees owed post-confirmation under 28 U.S.C. 1930(a)(6) should be calculated as a percentage of all of the Debtor's disbursements. The UST argues that under the plain language of the statute, "disbursements" means all payments made by the Debtor, including ordinary business expenses of the Debtor's reorganized business. The Debtor asserts that disbursements should include only those payments made pursuant to the confirmed plan of reorganization and exclude those disbursements made in the ordinary course of the Debtor's business. The Court finds that it is

---

[1] At the confirmation hearing, the Debtor and the UST stipulated that the past due fees were paid.

1

bound by the language of 28 U.S.C. § 1930(a)(6) as interpreted by a majority of courts; therefore, the Debtor must pay quarterly fees based on total disbursements regardless of source, including ordinary business expenses. In connection with this ruling, the Court issues the following findings of fact and conclusions of law:[2]

The Statute and Its Amendments

Section 1930(a)(6) of title 28 originally required a Chapter 11 debtor to pay fees to the UST based on a sliding scale until the plan was confirmed or the case was converted or dismissed. On January 27, 1996, Congress removed the words "a plan is confirmed or" from § 1930(a)(6) in section 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104-99, 110 Stat. 26, 37-38 (1996). As amended, section 1930(a)(6) provides as follows:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which **disbursements** total less than $15,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S.C. § 1930(a)(6) (emphasis added).

Even though the statute authorizes the UST to collect a quarterly fee based on "disbursements," the term "disbursements" is not defined in the statute. Neither is it defined in

---

[2] *See* Fed. R. Bankr. P. 7052.

2

the legislative history.[3]

Courts Have Applied Three Interpretations of "Disbursements"

When a word is not defined by statute, courts should "construe it in accord with its ordinary or natural meaning."[4] Despite this directive, courts that have interpreted the term "disbursements" in the context of 28 U.S.C. § 1930(a)(6) are divided into three different views: narrow, middle, and broad. *In re Quality Truck & Diesel Injection Service, Inc.*, 251 B.R. 682, 686 (S.D.W.Va. 2000). A minority of courts hold that "disbursements" are only those payments made by the bankruptcy estate.[5] These courts reason that once a plan is confirmed, all of the bankruptcy estate property revests in the debtor, and the bankruptcy estate ceases to exist.[6] Under this view, after confirmation no disbursements would come from the "bankruptcy estate," and only the minimum amount of fees would be due.[7] This approach, however, has been rejected at the appellate level.[8]

---

[3] *See Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1314 (11th Cir. 2001) (examining legislative history of statute); *In re P.J. Keating Co.*, 205 B.R. 663, 665 (Bankr. D. Mass. 1997) (noting that there was no legislative history on the meaning of the word "disbursements").

[4] *See Smith v. U.S.*, 508 U.S. 223, 228 (1993) (holding that a word that is undefined in a statute must be given its ordinary meaning).

[5] *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir.1994)(stating that disbursements includes "all payments from the bankruptcy estate."), *modified*, 46 F.3d 969 (1995).

[6] *See* 11 U.S.C.A. § 1141(b).

[7] The minimum fee of $250 is applicable when disbursements total less than $15,000. 28 U.S.C. § 1930(a)(6).

[8] *Tighe v. Celebrity Home Entertainment, Inc. (In re Celebrity Home Entertainment, Inc.)*, 210 F.3d 995, 999 (9th Cir.2000) (stating that courts misapplied the holding in *St. Angelo* case), *rev'g*, *In re Celebrity Duplicating Servs.*, 216 B.R. 942 (C.D. Cal. 1997) (holding that

3

Under the "middle" approach, only payments made by a reorganized debtor under a confirmed plan are considered disbursements; payments made in the ordinary course of business are excluded. *In re Betwell Oil and Gas Co.*, 204 B.R. 817, 820 (Bankr. S.D. Fla. 1997).[9] The *Betwell* court justified use of this approach by noting that the UST provides limited services post-confirmation and should receive a correlating lower amount of fees. *See Betwell*, 204 B.R. at 819 (noting that UST services post confirmation generally limited to supervising the consummation of the plan and seeking remedies for failure to do so).

The majority of courts interpret disbursements as all payments made by a debtor post-confirmation including ordinary business expenses.[10] The UST asks the Court to follow this broad view because it is consistent with the plain meaning of the term and with the statute's revenue generating purpose.[11] "Disbursement" means "money paid out; expenditure;" and

---

disbursements post-confirmation are only those made pursuant to plan). *See also In re A.H. Robins Company, Inc.*, 219 B.R. 145, 151 (Bankr. E.D. Va. 1998) ("This Court, therefore, does not find that *St. Angelo* limits the meaning of 'disbursements' to payments from the bankruptcy estate, nor that the cases citing *St. Angelo* to support such a limitation were correctly decided.").

[9] *See also Munford*, 216 B.R. at 918 (agreeing with middle approach because it "harmonize[s] the legislative purpose with the reorganized debtor's right to a 'fresh start.'").

[10] *See U.S. Trustee v. Pettibone Corp. (In re Pettibone Corp.)*, 251 B.R. 335, 339 n. 3 (N.D. Ill. 2000) (" This court agrees with the majority of courts which have considered this issue and concludes that, though there may be sound policy and equitable reasons to conclude otherwise, Congress intended that fees for the UST be calculated on the basis of all payments made by a reorganized debtor until the case is converted, dismissed, or closed."), and cases cited therein.

[11] *See CF&I Fabricators of Utah, Inc.*, 150 F.3d at 1236 (noting that Congress intended the 1996 Amendment to increase revenues collected through United States Trustee fees to support the self-funded administration of bankruptcy cases). *Cf. Quality Truck*, 251 B.R. at 685(noting that middle view does not comport with the plain meaning of the statute, the legislative history, or the purpose of the amendment and overall statute).

4

"payment." [12] And, Congress clearly intended to raise revenue with the passage of the 1996 amendments.[13]  Courts applying the broad approach also note that the narrow and middle approaches inappropriately bifurcate the meaning of disbursements into pre-confirmation disbursements and disbursements under the plan, post-confirmation.[14]  In the words of one court, "Congress did not indicate either explicitly or implicitly that it sought a different analysis [of disbursements] post-confirmation."[15]

<u>The Debtor argues that the middle approach is appropriate</u>

The Debtor asks this Court to limit the meaning of disbursements after confirmation to only those made pursuant to the confirmed plan.  First, the Debtor asserts that the fee structure based on gross disbursements overly burdens businesses like his that incur high costs and generate a small margin of profit.  Second, the Debtor contends that the middle view of disbursements comports with the limited role of the UST post-confirmation.  Third, the Debtor argues that the broad interpretation of disbursements coupled with the new discharge provisions

---

[12] *See Pettibone Corp.*, 251 B.R. 335, 340 (N.D. Ill. 2000) (quoting American Heritage Dictionary, 2d ed at 402 (1982)), *aff'g in part, rev'g in part, In re Pettibone*, 244 B.R. 906 (Bankr. N.D. Ill. 2000); *In re Wernerstruck, Inc.*, 130 B.R . 86, 89 (D.S.D. 1991) (quoting Black's Law Dictionary).

[13] *See Pettibone*, 251 B.R. at 341 ("Congress's declared purpose in passing the 1996 amendments was to increase revenue to the U.S. Trustee.") (citing H.R. Rep. 104-196, 104th Cong., 1st Sess. at 16-17 (1995)).

[14] *See Quality Truck*, 251 B.R. at 687 ("I see no persuasive reason to define disbursements differently post-confirmation."); *Pettibone*, 251 B.R. at 340 ("The statute gives no reason to think that Congress intended for "disbursements" to be calculated differently pre-confirmation than they are post-confirmation."); *P.J. Keating Co.*, 205 B.R. at 665 (". . . Congress intended the amendment to extend to the postconfirmation period the same payment obligations previously imposed preconfirmation.").

[15] *Quality Truck*, 251 B.R. at 688.

5

of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA), disproportionately burdens individual Chapter 11 debtors compared to corporate Chapter 11 debtors. The Debtor contends that in light of BAPCPA and its effect on individual Chapter 11 debtors, the majority position now lacks the logical flow that existed prior to BAPCPA. Each argument is addressed below.

The Debtor states that his business, retail sales of gasoline and convenience store items, is subject to high costs resulting in a low profit margin. The Debtor contends that since he spends $.91 to generate $1.00 of gross revenue, a fee based on all of his disbursements, including ordinary expenses, is unreasonable and overly burdensome. The UST argues that this information is not in the record as it is not included in the Debtor's monthly operating reports (MORs) and was not offered into evidence at the hearing on confirmation. The only source from which disbursements are calculated has been the MORs, and this is the source upon which the UST has been billing the Debtor for fees. The Court agrees. But, even if this information were on the record, it would be improper to consider without an indication from Congress that it intended to limit types of expenses or use net figures in the fee structure. As stated by the court in *Pettibone*, "Congress created a single straight-forward system which tailors UST fees to the amount of disbursements without requiring courts to engage in a time-consuming and burdensome process of determining how much money the UST should receive in each case."[16] It is Congress who must qualify the term disbursements, not this Court.

The Debtor next argues that requiring fees based on gross disbursements post-confirmation is unreasonable because the UST performs a very limited function post-

---

[16] 251 B.R. at 341.

confirmation. Even if true, Congress did not indicate in the statute or its history that it intended to link the amount of fees to the amount of services rendered by the UST.[17] As stated by the court in *Jamko, Inc.*,

> We are cognizant of the positions made by other courts that this broad interpretation could be viewed as creating a "special tax" on reorganized debtors, especially when the UST does less after confirmation than before to "earn" these fees. . . . We respect these positions but decline to follow them. If change is necessary, it is a consideration for Congress, not the courts.[18]

Under BAPCPA, the Debtor, as an individual, may incur fees over a longer time period than a similarly situated corporate debtor because the Debtor's case may be pending for a longer period of time. Section 1141 of title 11 now provides that a Chapter 11 individual debtor will not receive a discharge until all payments under the plan have been made.[19] In contrast, corporations and other business entities in Chapter 11 may receive a discharge upon confirmation of a plan.[20] A corporation may declare substantial consummation as soon as any

---

[17] *See Quality Truck*, 251 B.R. at 689 (stating that Congress created a self-funding fee mechanism similar to a "user fee."); *Pettibone*, 251 B.R. at 341 ("Congress could have, but did not, tailor the fees to the amount of time or effort actually expended by the UST.").

[18] *Jamko, Inc.*, 240 F.3d at 1316 n. 6 (citation omitted).

[19] Section 1141(a)(5)(A) provides as follows:
 (5) In a case in which the debtor is an individual--
    (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan . . .
11 U.S.C. § 1141(a)(5)(A).

[20] Section 1141 provides
    (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--
        (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--
            (i) a proof of the claim based on such debt is filed or deemed filed

7

payments are made under the confirmed plan, and may then apply for a final decree followed by the closure of the case. Fees could then be discontinued. *See* Fed. R. Bankr. P. 3022.[21] Thus, under BAPCPA, an individual debtor's Chapter 11 case could remain pending and subject to the UST's quarterly fees longer than a corporate debtor's Chapter 11 case.[22] The Debtor asserts that this unequal treatment of individual and corporate debtors is not intended by the overall scheme of Chapter 11 and that individual Chapter 11 debtors should not bear a greater burden to finance the UST program. To remedy this disparity, the Debtor asks the Court to interpret "disbursements" in a more restrictive manner.

To this Court's knowledge, no court has dealt with this issue since the effective date of BAPCPA . Despite the appeal of the Debtor's arguments, the Court cannot apply statutory language containing no indication that post-confirmation fees should be based on a different measure, especially in light of circuit court decisions to the contrary.[23] Any change in the way

---

under section 501 of this title;
(ii) such claim is allowed under section 502 of this title; or
(iii) the holder of such claim has accepted the plan; . . .

[21] *See In re Boulders on the River, Inc.*, 218 B.R. 528, 537 (D. Or. 1997) (stating that closure of a case after entry of final decree is also an event that terminates quarterly fees because case is not in existence) cited in *Quality Truck*, 251 B.R. 682, 685 (S.D.W.V. 2000).

[22] *See generally* Robert J. Landry, *Individual Chapter 11 Cases After BAPCPA: Can You Still Close The Case Early?*, 25 Am. Bankr. Inst. J. 10, * 60 (July/August 2006) (noting that the new and amended Code provisions seem inconsistent with closing individual Chapter 11 cases early after confirmation and stating that Advisory Committee on Bankruptcy Rules could amend Rule 3022 or add additional committee comments to address these issues regarding the closing of an individual's chapter 11 case).

[23] *See Celebrity Home Entertainment, Inc.*, 210 F.3d at 998 (holding that "disbursements" includes all payments made by reorganized debtor during post-confirmation period), *rev'g*, 216 B.R. 942 (C.D. Ca. 1997); *In re Jamko, Inc.*, 207 B.R. 758 (Bankr. S.D. Fla. 1996) rev'd 240 B.R. 645 (S.D. Fla. 1999), *aff'd, Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1316 (11th Cir. 2001) (holding that disbursements included ordinary operating

fees are calculated with regard to corporate or individual Chapter 11 debtors, even if justified under BAPCPA and other post-confirmation realities, must be made by Congress.

THEREFORE, IT IS HEREBY ORDERED that the quarterly fees due after plan confirmation shall be based on disbursements constituting gross expenditures by Debtor.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Ron Holmes
Attorney for Debtor
112 Edith Blvd NE
Albuquerque, NM 87102-3524

Alice Nystel Page
Asst. U.S. Attorney
Office of the U.S. Trustee
PO Box 608
Albuquerque, NM 87103-0608

---

expenses both pre and post confirmation); *Robiner v. Danny's Markets, Inc. (In re Danny's Markets, Inc.)*, 266 F.3d 523, 526 (6th Cir. 2001) ("post-confirmation operating expenses, must be accounted for in the calculation of the trustee's quarterly fee."), *rev'g, In re Danny's Markets, Inc.*, 239 B.R. 342 (Bankr. E.D. Mich. 1999) (holding that disbursements are limited to payments made pursuant to confirmed plan). *See also In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 421 (3d Cir. 2005) (stating that disbursement included all payments from each of 350 affiliated debtor corporations and could not be made by one affiliated debtor pursuant to centralized cash management system and affirming award of $3.7 million in unpaid fees to UST).

9